Dana GLEASON, Appellant,

v.

Carol LAWSON, Appellee.

No. 13-91-523-CV.

Court of Appeals of Texas,
Corpus Christi.

March 4, 1993.

car. Lawson's car rear-ended Gleason's car, injuring Gleason.

The accident occurred in Fort Bend County as Gleason was exiting U.S. Highway 90 and merging onto State Highway 6. Gleason testified that she exited from Highway 90 and came to a complete stop at a yield sign. No one was in front of her; however, she noticed a car closing rapidly from behind. She took her foot off the brake and began moving forward. She testified that traffic was coming and she could not merge, so she stopped. Her car was then struck from behind by Lawson's car.

Lawson testified that she was driving behind Gleason on the Highway 90 exit ramp. She stated that Gleason's car pulled forward as if Gleason were going to enter Highway 6. At that point, Lawson turned around to see if any cars were coming. She saw no traffic and began accelerating to merge. She then rear-ended Gleason's vehicle. Lawson stated that she thought, based on Gleason's vehicle's forward motion, and the fact that no cars were coming, that Gleason was accelerating to merge onto Highway 6.

After the accident, Lawson was taken to a hospital for treatment. Gleason drove home. Later, Gleason began complaining of back pain and other injuries caused by the accident. The evidence showed that Gleason was treated by several doctors for her injuries.

The jury found Gleason 40% negligent and Lawson 60% negligent. At the hearing on Gleason's motion for judgment, Lawson's attorney requested that costs be taxed equally against both parties. Gleason's attorney objected, claiming that costs could only be taxed against the losing party, and, based on the jury's verdict, Gleason was not a losing party. The trial court held that costs should be borne by the party incurring them.

Gleason's second and third points of error complain that there is no evidence or insufficient evidence to sustain the jury's finding that she was 40% comparatively negligent. A "no evidence" or "insufficient evidence" point is appropriate if

David Hughes, Markey, Hughes & Steiner, Corpus Christi, for appellant.

Sandra Sterba–Boatwright, Nelva Gonzales, Meredith, Donnell & Abernethy, Corpus Christi, for appellee.

Before NYE, C.J., and GILBERTO HINOJOSA and DORSEY, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Appellant, Dana Gleason, raises three points of error following a judgment entered upon a jury verdict finding her 40% comparatively responsible in a two-car automobile collision. She also complains that the trial court erred by requiring each party to bear its own costs. We modify and affirm.

Gleason, the driver of one car, sued appellee, Carol Lawson, the driver of another

the party without the burden of proof challenges a finding of fact. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). The scope of review for a no evidence point encompasses all the evidence and reasonable inferences which tend to support the finding of fact or jury verdict, and no other evidence. *Lewelling v. Lewelling,* 796 S.W.2d 164, 166 (Tex.1990). The no evidence standard of review requires us to overrule the point if, viewing the evidence and inferences in the light most favorable to the finding, there is any evidence of probative force to support the finding. *Id.*

■ On the other hand, the scope of review for an insufficient evidence point encompasses all the evidence which supports and contradicts the finding. *Plas-Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). This includes all relevant evidence on the issue. The insufficient evidence standard requires us to sustain this point only if the totality of the relevant evidence supporting the finding is so weak, or the conflicting evidence is so strong, that the finding is against the great weight and preponderance of the evidence and is manifestly wrong and unjust. *Id.*

The evidence viewed in the light most favorable to the verdict shows that Gleason stopped at the yield sign on the exit ramp, rather than merging. She then began to enter Highway 6, and stopped again. Although this fact was disputed, Lawson, who was behind Gleason, testified that she saw no on-coming traffic. The accident occurred when Lawson, who was looking over her shoulder, attempted to merge, while Gleason was stopping in front of her. Based on this evidence, the jury could have concluded that no traffic was coming, and Gleason did not have any reason for stopping the second time. It also could have concluded that this error of judgment was one cause of the accident.

■ Questions of causation and comparative responsibility are within the province of the jury. *See Farley v. M & M Cattle*

*Co.,* 529 S.W.2d 751, 756 (Tex.1975). We will not disturb the jury's finding. Gleason's second and third points of error are overruled.

■ Gleason's first point challenges the trial court's assessment of costs against her. The judgment states:

The Court has further examined the motion for judgment and the Affidavit attached thereto and heard the argument of counsel concerning costs of Court in this matter.

Having determined that the ·Plaintiff never forwarded to Defendant a demand in this matter and failed to enter into *good faith* settlement negotiations concerning this matter and finding that Defendant offered $5,000.00 prior to trial in this matter, but received no counter demand. [sic] The Court ORDERS that all costs of Court expended or incurred in this cause are hereby adjudged against the party incurring same. (emphasis added)

Although Lawson concedes that Gleason is the successful party, according to Lawson, "good cause" existed because Gleason failed to engage in settlement negotiations. The evidence of "good cause" included unsworn oral statements from Lawson's attorney and verified copies of letters indicating that Gleason failed to respond to settlement demands by Lawson, and that Lawson had authority to settle for the amount the jury awarded.

Generally, TEX.R.CIV.P. 131 controls the assessment of court costs. It mandates that a successful party recover from his adversary, unless "otherwise provided." [1] *Id.* TEX.R.CIV.P. 141 addresses the "otherwise provided" language in Rule 131. [2] It states that if the trial court finds that "good cause" exists, and such cause is stated on the record, then it may assess costs otherwise. *Id.; Rogers v. Walmart Stores, Inc.,* 686 S.W.2d 599, 601 (Tex. 1985).

---

1. Rule 131 provides: "The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided."

2. Rule 141 provides: "The court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules."

The issue in this point of error is whether, when there has been no order or referral by the trial judge, a party's refusal to respond to settlement demands and enter into settlement negotiations constitutes sufficient "good cause" to penalize that party with court costs. The paucity of cases defining "good cause" differ substantially. *See McKenna Inv. v. Atlas Energy Corp.*, 832 S.W.2d 651, 657 (Tex.App.—Fort Worth 1992, no writ); *Contemporary Health Management, Inc. v. Palacios*, 832 S.W.2d 743, 745 (Tex.App.—Houston [14th Dist.] 1992, no writ); *San Antonio Housing Auth. v. Underwood*, 782 S.W.2d 25, 26 (Tex.App.—San Antonio 1989, no writ); *Adams v. Stotts*, 667 S.W.2d 798, 800 (Tex. App.—Dallas 1983, no writ). For example, in *Rogers*, that defense counsel unnecessarily prolonged trial was sufficient "good cause" to assess costs against a successful defendant. *Rogers*, 686 S.W.2d 599, 601. The *Rogers* court noted that "good cause" is an "elusive concept" to be determined on a case-by-case basis. *Id.* It held that an appellate court should scrutinize the record to determine whether it supports the trial court's decision to assess costs against a successful party and, unless the record demonstrates an abuse of discretion, the trial court's assessment of costs based on "good cause" stated on the record should not be disturbed.[3] *Id.*

In the instant case, the trial court relied on Rules 131 and 141 as authority to assess costs in the manner it did. But, Rules 131 and 141 were not intended as a means to encourage settlement. They are not a recent product of the docket crisis. Other rules and statutes, however, explicitly address the encouragement of settlement. For example, Rule 166(*o*) was recently added to the Texas Rules of Civil Procedure to "broaden the scope of [Rule 166] and to confirm the ability of the trial courts at pretrial hearings to encourage settlement." TEX.R.CIV.P. 166(*o*) (Comment to 1990 change). It states that the court in its discretion may order the parties to appear before it in a pretrial conference to consider the settlement of a case. TEX.R.CIV.P. 166(*o*). To aid such consideration, the court may "encourage" settlement. *Id.* Unfortunately, the rule is silent in regard to precisely how a trial judge is to encourage settlement. Of course, a trial judge could hold a party in contempt for refusal to appear at a pretrial conference. However, Rule 166(*o*) contains no specific or implied penalty provisions for refusal to enter into out-of-court settlement negotiations.

Another example of statutes that address the encouragement of settlement is a provision for alternative dispute resolution procedures. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 154.001 et seq. (Vernon Supp. 1993). Pursuant to chapter 154 of the Texas Civil Practice & Remedies Code, a trial judge on its own motion or on motion of a party may refer a pending dispute for resolution by an alternative dispute resolution procedure. TEX.CIV.PRAC. & REM.CODE ANN. § 154.021; *Decker v. Lindsay*, 824 S.W.2d 247, 249–50 (Tex.App.—Houston [1st Dist.] 1992, no writ). Continuing the theme of encouragement, the explicit policy of chapter 154 is to encourage the peaceable resolution of disputes through "voluntary" settlement procedures. TEX.CIV.PRAC. & REM. CODE ANN. § 154.002. Although the statute provides no specific enforcement mechanisms or penalties for refusal to enter into settlement procedures, *see* TEX.CIV.PRAC. & REM.CODE ANN. §§ 154.001–.073, a trial judge has inherent authority to hold parties in contempt for refusal to physically appear at a scheduled meeting. In *Decker v. Lindsay*, the court held that a trial court cannot force parties to peaceably resolve their differences pursuant to chapter 154, but it can compel them to sit down with each other. *Decker*, 824 S.W.2d at 250. However, the court cannot compel the parties to negotiate in "good faith." *Id.* at 251.

Rule 166(*o*) of the Texas Rules of Civil Procedure, Chapter 154 of the Texas Civil

---

3. Justice Gonzalez stated in his dissent that, given "the adversarial nature of trial proceedings and the variety of strategies and styles of advocacy, we should not penalize a prevailing party that has vigorously prosecuted or defended his case within the parameters of the rules." *Rogers*, 686 S.W.2d at 601 (Gonzalez, J., dissenting).

Practice and Remedies Code, and *Decker* clearly indicate that settlement is to be *encouraged* by the trial courts.[4] TEX. R.CIV.P. 166(*o*); TEX.CIV.PRAC. & REM.CODE ANN. § 154.001 et seq.; *Decker,* 824 S.W.2d at 251. In this case, there was no encouragement; there was only after-the-fact retribution. The trial judge or Lawson could have moved to compel Gleason to enter into settlement negotiations pursuant to chapter 154. *Decker,* 824 S.W.2d at 251. Or, pursuant to Rule 166(*o*), the judge could have required the parties to appear in pretrial conference to discuss settlement. However, there is no evidence that the trial judge ordered the parties at any time to enter into settlement negotiations. Instead, the judge penalized Gleason for her refusal to enter into "good faith settlement negotiations" through his finding that "good cause" existed for assessing costs against her. This, the trial judge could not do. *See Decker,* 824 S.W.2d at 251. This after-the-fact retribution was also at least partially based on an insubstantial jury finding, which is something that only 20/20 hindsight reveals.

We believe that Rules 131 and 141 should not be used to penalize a party for refusal to enter into settlement negotiations when the party has not been ordered or even encouraged to do so.[5] Such use of an after-the-fact punitive measure does not fulfill the purposes of rules encouraging settlement or rules regarding the assessment of costs. It is also unfair to the parties to base a decision regarding assessment of costs on 20/20 hindsight.

Finally, we note that Gleason was merely asserting her right to trial by jury. The trial court's assessment of costs against a party for exercising her right to a jury trial encumbers that right and makes its assertion costly. Although a plaintiff who goes to trial always risks losing and paying court costs pursuant to Rule 131, such a risk should be a calculated one based upon the likelihood of emerging from the trial as a "successful party."

Accordingly, although we wholeheartedly acknowledge that alternative dispute resolution should be encouraged to alleviate crowded dockets, we hold that it was an abuse of discretion for the trial court to penalize Gleason by assessing costs against her for failure to voluntarily enter into good-faith settlement negotiations. Sufficient "good cause" was not shown to deviate from the general rule stated in Rule 131. Gleason's first point of error is sustained.

We modify the trial court's judgment to assess costs against appellee and otherwise affirm.

---

4. Critics of alternative dispute resolution procedures argue that dispute resolution outside the courtroom may disadvantage the poor because parties are rarely on equal footing and the disparities are more pronounced out of court. Brewster, Finck and Palmer, *An Overview of the Texas Bar Foundation Symposium on Cost Control at the Courthouse Held September 30, 1987, Corpus Christi, Texas,* 19 ST. MARY'S L.J. 507, 529–30 (1987).

5. If there is going to be a penalty provision for refusal to enter into settlement negotiations, it should be in the form of a rule or statute such that it can be consistently applied, resulting in equal treatment and equal results. For example, refusal to accept a properly communicated settlement offer may toll the accrual of prejudgment interest during the period in which the offer is open. TEX.REV.CIV.STAT.ANN. art. 5069–1.05 (Vernon Supp.1993). Also, FED.R.CIV.P. 68 provides that, when a settlement offer is made to a party that eventually prevails at trial, if the judgment is not more favorable than the original settlement offer, the prevailing party must pay the costs incurred after the making of the offer.