

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-12-00431-CV
_____

VICKEY JORDAN-NOLAN, APPELLANT

V.

JIMMY NOLAN, APPELLEE

On Appeal from the 106ᵗʰ District Court
Garza County, Texas
Trial Court No. 11-06-06586; Honorable Carter T. Schildknecht, Presiding

July 28, 2014

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Vickey Jordan-Nolan, brings this appeal complaining of the trial court's *Final Decree of Divorce* rendered in Jimmy Nolan's suit for divorce. Presenting three issues, she asserts the trial court abused its discretion in (1) failing to grant a continuance when her attorney withdrew the day before the final hearing resulting in a denial of due process and an unfair division of the community estate; (2) signing a decree that reflected it was an agreed decree when no agreement existed; and (3)

making an unjust and materially disproportionate division of the community estate. We modify the *Decree of Divorce* and affirm as modified.

## BACKGROUND

Vickey and Jimmy were married in May 2009, but separated two years later. Both had been previously married, and Jimmy had a disabled son from his prior marriage. Jimmy and his first wife, who died in 2008, started a 501(c)(3)[1] business in 2003 for disabled individuals called "Rafter Js" and "Rafter J Exceptional Rodeo." The business included rodeo-related equipment and animals and was available for events, parties, schools and rehabilitation purposes.

In late 2008, Jimmy met Vickey. She was in the air force when they married in 2009, so they did not immediately cohabitate. They began living together on Jimmy's property in November 2010, and six months later, she left the marriage.

On May 28, 2011, Jimmy left home around 8:00 p.m. to work an all-night, lock-in high school graduation party. Vickey rarely accompanied him to help with set-up and take-down at such events and did not attend this particular evening. When Jimmy returned home at 5:15 a.m., he encountered six to seven pickups and trailers loaded with his animals, furniture and other belongings attempting to leave his property.[2] He later discovered certain valuables such as gold and silver coins, artwork and expensive bits and spurs were missing. Not all the vehicles made it off the property, but Vickey drove away with a trailer that Jimmy and his first wife had purchased together to use as

---

[1] Section 501(c) of the United States Code exempts certain organizations from taxation. 26 U.S.C.A. § 501 (West 2011).

[2] Jimmy testified that Vickey's sons, nieces and friends helped her remove and load the property.

2

living quarters. As she departed, she drove into the brush and damaged the trailer. Jimmy immediately called 911 and the sheriff's department responded. Law enforcement was able to convince Vickey to return four hours later. She denied knowledge of the missing valuables that had been in an unlocked safe.[3] On June 9, 2011, Jimmy filed for divorce.

Vickey's counsel withdrew from representation in April 2012. On May 23, 2012, the trial court sent notice to the parties of the final hearing scheduled for July 10, 2012. Four days before the hearing, Vickey filed a *pro se* motion for continuance on the ground she was without counsel. The motion was not supported by affidavit or by consent of the parties. The motion was denied and filed of record the day before the hearing. Vickey represented herself at the hearing.

### ISSUE ONE—MOTION FOR CONTINUANCE

By her first issue, Vickey maintains the trial court abused its discretion in denying her motion for continuance when her counsel withdrew the day before the final hearing, resulting in denial of due process and an unfair division of the community estate. We disagree. We review a trial court's ruling on a motion for continuance for abuse of discretion. *See McAleer v. McAleer*, 394 S.W.3d 613, 616 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986)). The trial court has broad discretion to deny or grant a motion for continuance, and an appellate court will not reverse the trial court's ruling absent a clear abuse of discretion. *Villegas*, 711 SW.2d at 626.

---

[3] At the time of the final hearing, a theft investigation was pending and Jimmy's valuables had not been recovered.

The right to counsel is a valuable right and its unwarranted denial is reversible error. *Id.* However, when a motion for continuance is based on lack of counsel, the movant "must show that the failure to be represented at trial was not due to [his or her] own fault or negligence." *Id.*

Rule 253 of the Texas Rules of Civil Procedure provides that absence of counsel will not be good cause for continuance of the case when called for trial, except in the trial court's discretion. A motion for continuance must recite sufficient cause and be supported by affidavit. TEX. R. CIV. P. 251. Denial of a motion for continuance that fails to include a supporting affidavit presumes the trial court did not abuse its discretion. *Garcia v. Tex. Emp. Ins. Ass'n*, 622 S.W.2d 626, 630 (Tex. App.—Amarillo 1981, writ ref'd n.r.e.). Application of the presumption, however, may be unrealistic when the movant is a lay person whose attorney has been allowed to withdraw. *Villegas*, 711 S.W.2d at 626 (holding that when a trial court allows an attorney to voluntarily withdraw, it must give the party time to secure new counsel and time for new counsel to investigate and prepare for trial).

Here, Vickey's counsel moved to withdraw on March 23, 2012, on the ground of inability to effectively communicate with her. On April 16, 2012, the trial court signed an order granting that motion. On or before July 6, 2012, Vickey filed a *pro se* motion for continuance in which she recited she had attempted to retain new counsel on June 4, 2012, and had sent a retainer. She recites new counsel did not return her phone calls or contact her. The motion was not supported by affidavit and does not reflect it was

4

served on Jimmy.[4]  The trial court denied the motion on July 6, 2014, and it was filed on July 9th.

In her motion for new trial, Vickey asserted she began her search for new counsel immediately following her former counsel's withdrawal.  Attached to the motion are several exhibits.  One is a copy of a check dated June 4, 2012, from Vickey to her supposed new counsel, Sara J. Hudman, with a notation of "divorce retainer."  The check, however, has "VOID" written across it.  Also included with the motion is a copy of a letter dated June 7, 2012, from former counsel to Hudman forwarding Vickey's file as requested by Vickey.  The final exhibit is a copy of a letter from Hudman to Vickey dated July 9, 2012, declining to represent her due to insufficient time to review the file.

The record does not establish that Vickey and Hudman entered into an agreement for Hudman to represent Vickey.  Also absent is evidence that Hudman was aware the final hearing date was set for July 10, 2012, when she corresponded with Vickey to inform her she would be unable to represent her.  The correspondence indicates Hudman was merely reviewing Vickey's file to decide whether to represent her, and not a withdrawal from representation as represented by Vickey in her issue.

In ruling on a motion for continuance, the trial court may consider the entire history of the case.  *See Waste Water*, *Inc. v. Alpha Finishing & Developing Corp.*, 874 S.W.2d 940, 942 (Tex. App.—Houston [14th Dist.] 1994, no writ).  Following the discharge of her original counsel, Vickey had almost three months to obtain new counsel for the final hearing.  The record simply does not support her contention that

---

[4] At the final hearing, Vickey informed the trial court she had sent a copy to Jimmy's counsel by certified mail but did not provide proof.

5

she engaged new counsel who withdrew the day before the final hearing. She has not satisfied her burden to show that failure to obtain new counsel was not her fault nor the result of her negligence. Accordingly, the trial court did not abuse its discretion in denying her motion for continuance. Issue one is overruled.

**ISSUE TWO—WAS DECREE AGREED TO?**

Relying on *Chisholm v. Chisholm*, 209 S.W.3d 96 (Tex. 2006), and *Sohocki v. Sohocki*, 897 S.W.2d 422 (Tex. App.—Corpus Christ 1995, no writ), Vickey contends the trial court erred by entering a decree that contains the *Decree Acknowledgment* reflecting the parties have "read and agreed to" the contents of the decree and voluntarily affixed signatures to it.[5] She contends no such agreement exists and she did not sign the decree.[6] However, the word "agreed" does not appear in the *Decree Acknowledgment* and is not included in the title of the decree as it was in *Sohocki.* As such, the cases relied on by Vickey are inapposite. Both involved settlement agreements which were erroneously granted by the trial court when the records did not show consent or consent had been revoked.

---

[5] The *Decree Acknowledgement* provides in relevant part that the parties:

> each acknowledge that before signing the Final Decree of Divorce they have read this Final Decree of Divorce fully and completely, have had the opportunity to ask any questions regarding the same, and fully understand that the contents of this Final Decree of Divorce constitute a full and complete resolution of this case. Petitioner and Respondent acknowledge that they have voluntarily affixed their signatures to this Final Decree of Divorce, believing this agreement to be a just and right division of the marital debt and assets, and state that they have not signed by virtue of any coercion, any duress, or any agreement other than those specifically set forth in this Final Decree of Divorce.

[6] The record supports Vickey's contention that she did not sign the decree.

In the underlying case, it is evident from the final hearing that no settlement agreement existed between the parties, and Vickey did not consent to the final decree. When the trial court announced the terms of the decree, she twice announced she would be appealing the case.

We need not set aside the final decree and remand the cause to effectuate a settlement agreement that does not exist. However, this Court has the power to modify the judgment of the court below to make the record speak the truth when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b). *See generally Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). Appellate courts have the power to reform whatever the trial court could have corrected by a judgment nunc pro tunc where the evidence necessary to correct the judgment appears in the record. *Ashberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Issue two is sustained, and in accordance with that ruling, we modify the trial court's *Final Decree of Divorce* to delete the paragraph, appearing at page 9, entitled *Decree Acknowledgment.*

## ISSUE THREE—DIVISION OF PROPERTY

By her third issue, Vickey contends the trial court abused its discretion by making an unjust and materially disproportionate division of the community estate. We disagree. In a divorce decree, the trial court must divide the community property in a manner the court deems just and right having due regard for the rights of each party. TEX. FAM. CODE ANN. § 7.001 (West 2006). There is no requirement that the court effectuate an equal division. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). A spouse has a separate property interest in all property "owned or claimed" before the

marriage or acquired during the marriage by gift, devise or descent. TEX. CONST. art. XVI, § 15 (West Supp. 2013); TEX. FAM. CODE ANN. § 3.001 (West 2006). Community property consists of all property, other than separate property, acquired by either spouse during marriage. All property possessed by either spouse during the marriage or at its dissolution is presumed to be community property. *Id.* at §§ 3.002, 3.003(a). The community property presumption can be overcome by tracing property and presenting clear and convincing evidence that it is one spouse's separate property. *See Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011). Clear and convincing evidence means that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014).

A trial court has wide discretion in division of marital property and that discretion is reviewed for abuse. *Murff*, 615 S.W.2d at 698. A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *See Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). Generally, there is no abuse of discretion where there is some evidence of a substantive and probative character to support the trial court's decision. *Swaab v. Swaab*, 282 S.W.3d 519, 515 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd w.o.j.).

Jimmy and Vickey were married for only two years and did not amass a large community estate. He established through his testimony and exhibits that most of the property and assets existing at the time of divorce were his separate property. In addition to personal and real property awarded to Jimmy, the trial court ordered Vickey

8

to pay Jimmy, within thirty days of the signing of the decree, $15,700. He produced exhibits showing ownership of a stagecoach, four mules and a people hauler that traced back to his first marriage. He sold the people hauler and mules on or about May 20, 2011, and deposited the proceeds of $14,000 into his business account which Vickey withdrew on the day she left the marriage. He also established he defended a suit against Vickey for non-payment of her John Deere tractor, which she left on his property, costing him $1,700.

Jimmy testified Vickey had improved his property in the amount of $6,000 by adding carports and a large barn. However, he claimed the items taken from his home, some which were never recovered, were appraised at $68,000.

Vickey lodged several objections during Jimmy's testimony and was informed by the trial court that she would have the opportunity to cross-examine him. After Jimmy's direct examination, however, Vickey announced, "I have no questions." After Jimmy rested, the trial court advised Vickey she would have to be sworn in to testify and she declined adding "I don't have anything." She rested her case without offering any additional evidence and again stated, "I have nothing to say."

The trial court announced that no evidence was presented by Vickey to contradict the evidence presented by Jimmy concerning the division of the marital estate and then proceeded to announce the terms of the divorce. Based on the record before us, Vickey has not established an abuse of discretion by the trial court in the division of that estate. Issue three is overruled.

## CONCLUSION

We modify the trial court's *Final Decree of Divorce* to delete the paragraph, appearing at page 9, entitled *Decree Acknowledgment.* As modified, the trial court's *Final Decree of Divorce*, is affirmed.

Patrick A. Pirtle
Justice